STATE OF LOUISIANA

VERSUS

FRANK WILLIAM BECKENDORF, III

NO. 24-KA-242

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-3638, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

February 26, 2025

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Scott U. Schlegel

**CONVICTION AFFIRMED; SENTENCE**
**AFFIRMED IN PART AND VACATED IN**
**PART; REMANDED WITH INSTRUCTIONS**
    **SUS**
    **SMC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
FRANK WILLIAM BECKENDORF, III
 Sherry A. Watters

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Monique D. Nolan
 Molly Love
 Leo M. Aaron

**SCHLEGEL, J.**

Defendant, Frank W. Beckendorf III, was convicted of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. He was sentenced to eighteen years imprisonment and ordered to pay a fine of one thousand dollars. On appeal, he challenges his sentence, arguing that eighteen years is excessive. For the following reasons, we affirm defendant's sentence, except that we vacate the portion of defendant's sentence imposing a financial obligation and remand this matter to the trial court for compliance with La. C.Cr.P. art. 875.1.

*Procedural History*

On November 7, 2023, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, on or about May 21, 2023. The bill of information alleged that defendant had been previously convicted of the crime of "Possession CDS without a prescription, in violation of 40:967C, on March 27, 2020, under case number 29-F-2020, of the Twenty-Second Judicial District Court of Jefferson." Defendant was arraigned on December 7, 2023, and pled not guilty.

On February 28, 2024, the Jefferson Parish District Attorney amended the bill of information as to the previous conviction under La. R.S. 14:95.1, to change Jefferson Parish to St. Tammany Parish. Trial began and concluded on that same day, with the jury finding defendant guilty as charged. Defendant waived sentencing delays. The trial court sentenced defendant to eighteen years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court also ordered defendant to pay a one thousand dollar fine.

On March 5, 2024, defendant filed a motion to reconsider sentence. On March 13, 2024, defendant filed a motion for appeal, which was granted on March 18, 2024.

On November 22, 2024, this Court remanded the matter to the trial court with instructions to rule on the motion to reconsider sentence. On December 18, 2024, the trial court denied defendant's motion to reconsider sentence. We now consider defendant's appeal.

*Facts*

At 8:17 a.m. on Sunday, May 21, 2023, the Jefferson Parish Sheriff's Office (JPSO) received a 911 call from a resident on Oaklawn Street in Metairie. The 911 caller said that a known male was on her second-floor balcony trying to enter her home, and that he was known to carry a firearm.

Deputy Evan Pizzuto with the JPSO testified that he was the initial responding officer, who was dispatched to Oaklawn Street in response to the 911 call. He explained that, upon arriving, he saw a white male on the second-floor balcony. He identified defendant in court as the man on the balcony. Deputy Pizzuto instructed defendant to come down from the balcony, but defendant claimed he could not, as he had climbed up onto the trash can and there were no stairs. He testified that defendant told him he was at the residence to inform a friend that someone was planning to kill that friend. The deputy said that he did not find this claim by defendant to be credible. The deputy stated that when he asked defendant if he had a gun, defendant said "no". The deputy further testified that defendant said he had permission to be on the balcony, which Deputy Pizzuto testified was not true.

The 911 caller eventually came to the front door and let two other deputies into her home to apprehend and detain defendant. Deputy Pizzuto testified that he spoke with the 911 caller at the scene and that she was consistent with what she reported on the 911 call. The other deputies patted down defendant for weapons, handcuffed him, and removed him from the balcony. As the deputies were escorting defendant to Deputy Pizzuto's unit, Deputy Pizzuto noticed defendant

was "hunched over" so he asked defendant to stand up straight. Deputy Pizzuto testified that as defendant was standing up, he lifted up defendant's shirt and saw a clip that was consistent with a holster on the front side of defendant's body, which led to the discovery of a firearm on defendant's waistband.

Deputy Pizzuto determined that the firearm was a Glock .45, model 30. He testified that the Glock contained nine live rounds in the magazine and one bullet in the chamber. A crime scene technician took possession of the evidence and photographed it at the scene. Deputy Pizzuto testified that Deputy Steven Perez read defendant his *Miranda* rights while defendant was being placed in the deputy's police unit. Deputy Pizzuto testified that he ran defendant's name through the NCIC (National Crime Information Center) to determine defendant's criminal status and learned that defendant had a prior felony conviction in 2020.

Deputy Pizzuto testified his body camera was activated at the time of the incident, as was his patrol unit's dash camera. Deputy Pizzuto testified that defendant said that he thought he could possess the gun because it was registered in defendant's name and that he thought he could not purchase any more guns after the one he already had. The deputy further testified that defendant offered to let the officers keep his gun. Deputy Pizzuto later learned that the gun was actually registered to defendant's father. Defendant was arrested for being a convicted felon in possession of a firearm.

Deputy Steven Perez with the JPSO testified that he responded to a 911 call for service to an alleged burglary in progress on May 21, 2023. He learned through the dispatcher that the suspect was known to carry a firearm. When Deputy Perez arrived on the scene, defendant was on the second-floor balcony. He testified that he witnessed Deputy Pizzuto discover the firearm on defendant. Deputy Perez explained the firearm was then cleared by another officer. Deputy Perez testified that the type of holster defendant was wearing was an "inside-the-

waistband" holster, which is used for concealment. Deputy Perez explained that with this type of holster, the gun is not plainly visible. Deputy Perez testified that defendant lied when he said he did not have a weapon on him because he actually did have a weapon on his person. Deputy Perez read defendant his *Miranda* rights. Deputy Perez's body camera was activated during the arrest. Both deputies testified that there was another male with defendant who was in the parking lot during this incident. This person was initially detained but ultimately released after the officers determined that he was not wanted for anything.

The State and defense counsel stipulated that defendant had a prior conviction on March 27, 2020 for possession of Schedule II controlled dangerous substances without a prescription in violation of La. R.S. 40:967(C) in the 22nd Judicial District Court of St. Tammany Parish.

*Law and Analysis*

In his sole assignment of error, defendant argues that the trial court erred in imposing a near maximum sentence, which under the circumstances, is unconstitutionally excessive. He argues that the sentence imposed is close to the maximum under the law and is appropriate for only the most egregious offenders, which he is not. He further asserts that the sentence was imposed without any information to individualize the sentence.

The State responds that defendant did not raise the issue of the trial court's failure to consider the sentencing guidelines of La. C.Cr.P. art. 894.1 in his motion to reconsider sentence and is therefore now precluded from raising this issue on appeal. Consequently, the State avers that defendant is limited to a review of whether the sentence is constitutionally excessive. The State further argues that defendant's actions and possession of a loaded firearm created a dangerous situation and that defendant's extensive criminal background supports the trial court's imposition of an eighteen-year sentence. Additionally, the State argues that

defendant's sentence is not excessive when compared to sentences imposed for similar crimes.

First, we point out that although defendant filed a motion to reconsider sentence pursuant to La. C.Cr.P. art. 881.1, he did not state any specific grounds upon which the motion was based. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. *State v. Harmon*, 19-570 (La. App. 5 Cir. 9/9/20), 301 So.3d 1278, 1288, *writ denied*, 20-1160 (La. 10/14/20), 303 So.3d 306; *State v. Taylor*, 18-126 (La. App. 5 Cir. 10/17/18), 258 So.3d 217, 224, *writ denied*, 18-1914 (La. 5/20/19), 271 So.3d 200. Because defendant did not argue in the motion to reconsider that the trial court did not adequately consider the factors of La. C.Cr.P. art. 894.1, defendant is limited to a review of his sentence for constitutional excessiveness.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, courts can review it for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *State v. Le*, 22-468 (La. App. 5 Cir. 8/9/23), 370 So.3d 162, 172, *writ denied*, 23-1230 (La. 2/6/24), 378 So.3d 752. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discretion, not whether another

sentence might have been more appropriate. *Id.* Generally, courts reserve maximum sentences for cases involving the most serious violations of the offense charged and the worst type of offender. *State v. Williams*, 24-169 (La. App. 5 Cir. 12/18/24), 2024 WL 5151087 at *2.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State *v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. Appellate courts consider three primary factors in evaluating whether a sentence is excessive: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. *Le*, 370 So.3d at 173. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Hayman*, 20-323 (La. App. 5 Cir. 4/28/21), 347 So.3d 1030, 1043.

At the time of the offense in question, the penalty provision of La. R.S. 14:95.1(B) provided that whoever was found guilty of the crime should be "imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars."

During the sentencing colloquy, the trial court considered the evidence presented at trial and stated the following:

THE COURT:

Mr. Beckendorf, I also want to put on the record you've had numerous chances throughout your life. You have a negligent homicide from 2019 where I believe someone was killed. Is that correct?

MS. LOVE:

That's correct, sir.

THE COURT:

2020, you have a possession of a CDS, a controlled dangerous substance.  You have a possession of heroin.  You have a possession of fentanyl, an obstruction of justice, an aggravated flight, an attempted 95E where you were found in possession of firearms, a gun and drugs.  That was in 2020.  2023, you have a simple burglary.  Was that of an inhabited dwelling or just a burglary?

MS. LOVE:

It's a simple burglary.

THE COURT:

You also have another 95.1 from 2023.  That's a year ago.  A felon in possession of a firearm.  In 2023, you were also found with marijuana, possession with intent to distribute marijuana.

I don't know, Mr. Berkendorf, why you were there that day.  I don't know why you were trying to get into that lady's apartment.  I don't know if your story rings all true to me.  I don't think it does.  I think you were there and you had some nefarious purpose to be there.  Thank God that the woman called the police.  Thank God the police got there in time and prevented something really bad from happening.  I'm really not pleased that the police officers didn't find that weapon on you first but I got to admit, you're sitting up there on the balcony, they're not.  And when they went up there, I guess they missed it.  They were taking your word for it that you didn't have a gun.  You lied all throughout the whole thing.  Lie after lie.  So you reap what you sow, Mr. Beckendorf.  Thank you.  Thank you, Deputies.  I want him held without bond.

Thus, in rendering its sentence, the trial court considered the serious nature of the crime, the dangerous situation created by the defendant, and defendant's lengthy criminal history.

Considering the nature of the crime, as well as the nature and background of defendant, the record reflects that defendant climbed up the 911 caller's second-story balcony without her permission while armed with a loaded .45 caliber Glock that had one bullet in the chamber.  The caller stated on the 911 call that defendant was trying to get in her door and that she was hiding in fear because she knew he carried a gun.  When confronted by police officers, defendant lied to them and denied having a firearm on him.  Ultimately, the Glock was found concealed in his

waistband. Defendant also told the police officers that he was there to tell his friend that he had heard that someone was going to kill his friend, which neither the officer nor the trial court found credible.

The record reflects that at the time of sentencing defendant agreed that along with the conviction for the predicate offense of possession of a controlled dangerous substance, without a prescription, in violation of La. R.S. 40:967(C), defendant also had numerous arrests and convictions from 2019 to 2023, including: negligent homicide; possession of heroin; possession of fentanyl; obstruction of justice; aggravated flight from an officer; attempted La. R.S. 14:95(E) while in possession of a gun and drugs; simple burglary; possession of a firearm by a convicted felon; and possession with intent to distribute marijuana.

With respect to sentences imposed for similar crimes by the same court and other courts, we have previously considered maximum sentences imposed on defendants convicted of La. R.S. 14:95.1, who also have a prior drug conviction as the underlying offense. In *Williams*, 2024 WL 5151087 at *2, we found that the defendant's maximum twenty-year sentence for a violation of La. R.S. 14:95.1 was not excessive. The record reflected that the defendant was unresponsive in his car after an accident and had to be administered Narcan. A 9mm handgun was found on the floorboard with an extended magazine containing fourteen rounds of ammunition and a jammed spent bullet casing. A bag of narcotics was also found in the vehicle. A criminal history search of the defendant resulted in outstanding traffic warrants and prior felony convictions that made it illegal for him to possess a firearm. *Id.* at *1. We stated that the defendant showed a disregard to public safety by choosing to drive severely impaired "to the point of an overdose" and that the firearm similarly posed a threat to public safety. *Id.* at *2.

In *State v. Warmack*, 07-311 (La. App. 5 Cir. 11/27/07), 973 So.2d 104, we upheld the prior maximum 15-year sentence for a conviction for a defendant's

possession of a firearm by a felon. In that case, the defendant had three prior convictions for various drug offenses, and the gun he possessed was fully loaded. Similarly, in *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297, we upheld the maximum sentence for a violation of La. R.S. 14:95.1, where the defendant had one prior drug conviction and possessed a loaded firearm at the time of his arrest, and that under the circumstances his actions presented a danger to the public.

After a review of the record and sentences for similar convictions, we cannot say that defendant's sentence is constitutionally excessive or otherwise shocks our sense of justice. There is nothing to suggest that the trial court abused its broad sentencing discretion in this matter.

*Errors Patent Review*

We reviewed the record for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

As a part of defendant's sentence under La. R.S. 14:95.1, the trial court ordered defendant to pay a fine of $1,000. La. C.Cr.P. art. 875.1 requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial financial hardship to defendant or his dependents. Upon review of the record, there is no indication that the trial court conducted such a hearing or that the judicial determination was waived. Accordingly, due to the requirements of La. C.Cr.P. art. 875.1(C), we vacate the financial obligation imposed on defendant as part of his sentence and remand this case for compliance with La. C.Cr.P. art. 875.1. *See State v. Bello-Urbina*, 24-8 (La. App. 5 Cir. 10/30/24), 2024 WL 4612665, *10; State *v. Smith*, 23-308 (La. App. 5 Cir. 2/28/24), 382 So.3d 1121, 1128.

24-KA-242                                              9

*Decree*

For the foregoing reasons, we affirm defendant's conviction and sentence, except the portion of defendant's sentence that imposed a financial obligation, which is hereby vacated and remanded to the trial court for compliance with La. C.Cr.P. art. 875.1.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 26, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-242

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
SHERRY A. WATTERS (APPELLANT)         MONIQUE D. NOLAN (APPELLEE)         THOMAS J. BUTLER (APPELLEE)

### MAILED

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
LEO M. AARON (APPELLEE)
DISTRICT ATTORNEY
MOLLY LOVE (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053